<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | Crim. No. 09-363 (SDW) |
| Plaintiff, | |
| v. | **OPINION** |
| DAVID B. KILKEARY, | July 21, 2026 |
| Defendant. | |

**WIGENTON**, District Judge.

Before this Court is *pro se*[1] Defendant David B. Kilkeary's ("Defendant") Motion for Compassionate Release under the First Step Act ("FSA"), 18 U.S.C. § 3582(c)(1)(A). (D.E. 54 ("Motion" or "Mot.").) Having considered the parties' submissions, and for the reasons stated below, Defendant's Motion is **DENIED**.

**I.      BACKGROUND AND PROCEDURAL HISTORY**

For a more detailed overview of the facts, the parties may refer to the Third Circuit's opinion addressing Defendant's sentencing appeal. *United States v. Kilkeary*, 410 F. App'x 554, 555–57 (3d Cir. 2011).[2]

On August 19, 2009, Defendant pleaded guilty to one count of willfully threatening to cause harm to persons and property by conveying false information concerning the use of an

---

[1] Defendant was represented by counsel in this matter during his guilty plea, sentencing, and appeal. (D.E. 31; D.E. 43; D.E. 41.)

[2] On appeal, the Third Circuit affirmed Defendant's sentence. *Kilkeary,* 410 F. App'x at 560.

explosive device, in violation of 18 U.S.C. §§ 844(e) and 2; one count of kidnapping, contra 18 U.S.C. §§ 1201(a) and 2; and one count of extortion, in violation of 18 U.S.C. §§ 1951(a) and 2. (D.E. 23; Pre-sentence Report ("PSR") ¶ 1.)  On March 5, 2010, the Honorable Peter G. Sheridan, U.S.D.J.  sentenced Defendant to a 300-month term of imprisonment and five years of supervised release.[3] (D.E. 45.)  At sentencing, Judge Sheridan determined Defendant's total offense level was thirty-five and his criminal history fell within category two.[4]  (D.E. 48 at 261:19–21.)  Pursuant to the United States Sentencing Guidelines Manual, Defendant's advisory sentencing guideline range was 188 to 235 months' imprisonment.  (*Id.* at 259–60); U.S. SENT'G GUIDELINES MANUAL ("U.S.S.G") § 5A (U.S. SENT'G COMM'N 2009).

Defendant has been in continuous custody since his arrest on November 14, 2007,[5] and has an expected release date of July 30, 2029.  (PSR at 1 (noting Defendant has been in custody since his arrest)); D.E. 54 at 2.)

On December 7, 2024, Defendant submitted a compassionate release request to the warden of Federal Correctional Institution ("FCI") Victorville.  Defendant did not receive a response from the warden within thirty days, and consistent with the FSA's administrative exhaustion requirement,[6] submitted the instant Motion on February 10, 2025.  (D.E. 54; D.E. 54-2 at 3; D.E. 54-3 at 1.)  The Government filed its opposition on July 14, 2025.  (D.E. 55.)

---

[3] This matter was reassigned to the undersigned on March 4, 2025.  (D.E. 53.)

[4] Judge Sheridan varied upward in imposing the 300-month sentence.  (D.E. 45 at 5.)  This number was lower than the PSR's calculated overall offense level of forty-one and criminal history category of two, which corresponded with a Guideline range of 360 months' imprisonment to life.  U.S.S.G. § 5A (U.S. SENT'G COMM'N 2009).

[5] The Federal Bureau of Prisons' Inmate Locator website indicates Defendant is currently located at FCI Victorville Medium I in Adelanto, California.  Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (accessed June 10, 2026); (Mot. at 6; D.E. 54-1 at 6; D.E. 54-3.)

[6] Under the FSA, a defendant may move for compassionate release "after fully exhaust[ing] all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the

## II.    LEGAL STANDARD

Although a district court generally has limited ability to modify a federally imposed sentence once it commences, the FSA permits district courts to grant compassionate releases when there exist "extraordinary and compelling reasons" to reduce a sentence. *Dillon v. United States,* 560 U.S. 817, 824–25 (2010); 18 U.S.C. § 3582(c)(1)(A)(i).  Under the FSA, a defendant seeking sentence reduction has the burden of establishing that:  (1) he has satisfied the procedural prerequisites for judicial review; and (2) extraordinary and compelling reasons exist to justify compassionate release.  18 U.S.C. § 3582(c)(1)(A).

The compassionate release statute, as amended by the FSA on December 21, 2018, states that a defendant seeking compassionate release must ask the Bureau of Prisons ("BOP") to file a motion for a reduced sentence on his behalf.  *Id.*  The defendant can only file a motion "after [they] have fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or after thirty days, whichever is earlier.  *Id.*; *see also United States v. Raia*, 954 F.3d 594, 595 (3d Cir. 2020) (noting the FSA's exhaustion requirement).

Once the procedural prerequisites have been satisfied, a court may reduce a sentence if it "finds that the sentence reduction is (1) warranted by 'extraordinary and compelling reasons'; (2) 'consistent with applicable policy statements issued by the Sentencing Commission'; and (3) supported by the traditional sentencing factors under 18 U.S.C. § 3553(a), to the extent they are applicable."  *United States v. Andrews*, 12 F.4th 255, 258 (3d. Cir. 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)).

---

lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A).  Here, Defendant petitioned FCI Victorville's warden on December 7, 2024, and submitted his motion on February 10, 2025, which was docketed on February 26, 2025.  (D.E. 54-1, 54-2.)  As Defendant filed his motion beyond the thirty-day response time outlined in the statute, this requirement is satisfied.

3

When determining whether a defendant's reasons are extraordinary and compelling, courts look at the ordinary meaning of those terms. The Supreme Court recently explained that "extraordinary" means "'most unusual,' 'far from common,' or 'having little or no precedent,'" and "compelling" means "'tending to convince or convert by or as if by forcefulness of evidence.'" *Rutherford v. United States*, 146 S. Ct. 1320, 1330 (2026) (citing WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 807, 463 (1976)). "Putting these definitions together, 'extraordinary and compelling reasons' are those that are especially unusual and convincing." *Id.* The Court noted that while these terms "leave room for judgment," they "are not so flexible as to encompass any consideration." *Id.* at 1332.

The Sentencing Commission has identified categories of circumstances that may constitute extraordinary and compelling reasons, including medical conditions, age, family circumstances, and other reasons. U.S.S.G. § 1B1.13(b) (U.S. SENT'G COMM'N 2025). The Commission's April 2023 amended policy statement ("Policy Statement") also added "[u]nusually [l]ong [s]entence" as a potential ground under § 1B1.13(b)(6). 88 Fed. Reg. at 28,254. The Supreme Court concluded, however, that this provision is inconsistent with the governing statute, reasoning that when "Congress declines to make a sentencing amendment retroactive, the fact that a preamendment sentence is longer than it would have been postamendment is not an 'extraordinary and compelling reaso[n]' that 'warrant[s]' a sentence reduction." *Rutherford*, 146 S. Ct. at 1326, 1330 (alterations in original) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). The Commission's policy statements must be "consistent with" the governing statute, 28 U.S.C. § 994(a), and "[courts] are not bound to follow the Commission's guidance when it "exceed[s its] statutory authority" by adopting a definition of a term that is inconsistent with the statute." *Id.* at 1334 (second and third alterations in original) (quoting *Batterton v. Francis*, 432 U.S. 416, 426 (1977)). To the extent

4

any non-retroactive change in law may be relevant, it may be considered in connection with the § 3553(a) sentencing factors. *See Andrews*, 12 F.4th at 261–62 (declining to consider nonretroactive changes to 18 U.S.C. § 924 as a basis for compassionate release but noting courts could consider "the current sentencing landscape" as a "legitimate consideration" when weighing the § 3553(a) factors).

Additionally, a defendant's rehabilitation, standing alone, does not constitute an extraordinary and compelling reason for compassionate release. 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13(d) (U.S. SENT'G COMM'N 2025). While rehabilitation may be considered in connection with the § 3553(a) analysis, it cannot independently justify a sentence reduction. *United States v. Stewart*, 86 F.4th 532, 535–36 (3d Cir. 2023).

## III.    DISCUSSION

### A.  Extraordinary and Compelling Reasons

Defendant has failed to present extraordinary and compelling reasons to reduce his sentence. Defendant argues that his rehabilitation efforts, the length of his sentence, and his need to financially support his sister constitute extraordinary and compelling reasons for his release. (D.E. 54-2 at 1, 3.) This Court construes these arguments as raising rehabilitation and family circumstances under § 1B1.13(b)(3), and an unusually long sentence under § 1B1.13(b)(6), respectively. Each ground will be addressed in turn.

#### i.    Rehabilitation

Defendant cites his participation in educational services, completion of BOP programming, receipt of psychological treatment with BOP doctors, good behavior, and other ways that he has bettered himself as reasons in support of his motion for compassionate release. (*See id.* at 1, 3.) According to Defendant, not only has he volunteered to "share his knowledge with other inmates,"

5

but he has taught GED classes and music classes. (*Id.* at 1.) While commendable, defendants are expected to comply in this regard. "[R]ehabilitation cannot 'by itself' serve as an extraordinary and compelling reason for [a defendant's] release." *United States v. Stewart*, 86 F.4th 532, 535–36 (3d Cir. 2023) (citing U.S.S.G. § 1B1.13(d) (U.S. SENT'G COMM'N 2025); 28 U.S.C. § 994(t)); *see also United States v. Bledsoe*, No. 22-2022, 2022 WL 3536493, at *3–4 (3d Cir. Aug. 18, 2022) ("[C]laimed efforts in furtherance of rehabilitation . . . are, standing alone, neither 'extraordinary' nor 'compelling' for purposes of compassionate release standard."). Rehabilitation can be "considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." U.S.S.G. § 1B1.13(d) (U.S. SENT'G COMM'N 2025). Because Defendant has not put forth additional circumstances that would be considered extraordinary and compelling, compassionate release is unwarranted.

### ii.    Family Circumstances

Defendant also argues that he should be released early to support his sister financially by helping her pay basic bills and the mortgage of their late parents' home to keep the house. (D.E. 54-2 at 1.) Defendant notes that in 2024, both of his parents passed away due to age-related Alzheimer's and dementia. (*Id.*) Due to his incarceration, his sister was their parents' full-time caretaker for over five years. (*Id.*) He explains that as a result of undertaking that responsibility, his sister has been out of the workforce for five years and that due to her age, she is unable to find steady income. (*Id.*)

The Policy Statement lists several examples of family circumstances that may be extraordinary and compelling, including the incapacitation of the defendant's spouse, partner, parent, minor child, or mentally/physically disabled adult child, along with "circumstances similar

to those in paragraphs (3)(A) through (3)(C) . . . involving any other immediate family member," which includes a "sibling of the defendant," and that "the defendant would be the only available caregiver for such family member."  U.S.S.G. §§ 1B1.13(b)(3)(A)–(D) (U.S. SENT'G COMM'N 2025).

Determining incapacity requires, among other things, consideration of various statements, which include verifiable medical documentation regarding the incapacitation, along with "a statement and letters of documentation that the inmate is the *only* family member capable of caring for the [family member], and a statement and documentation regarding the inmate's release plan." *United States v. Doolittle*, No. 19-501, 2020 WL 4188160, at *3 (D.N.J. July 21, 2020) (alteration in original) (emphasis added).  Absent such documentation, courts will deny compassionate release.  *See id.* (explaining that where a defendant "present[s] no medical documentation or other competent evidence demonstrating that his [family members are] incapacitated," relief will be denied).  While Defendant has submitted a release plan, he has not submitted medical documentation or a statement establishing that he is his sister's only caregiver.  (D.E. 54-2 at 1–2.)  While courts have granted compassionate release in "circumstances such as caring for a close relative who is terminally ill or requires around-the-clock care and include other compelling reasons justifying the release," here, Defendant has failed to allege facts showing that his sister is incapacitated as defined under the Policy Statement.  *See Doolittle,* 2020 WL 4188160, at *3.

Although Defendant's sister's financial situation is unfortunate and his desire to support her honorable, "[i]t is not uncommon . . . for a criminal sentence to impose burdens, sometimes severe ones, on family members."  *United States v. Dunich-Kolb*, No 14-150, 2022 WL 580919, at *8 (D.N.J. Feb. 14, 2022); *see also United States v. Jones*, No. 13-252, 2021 WL 1060218, at *9–10 (W.D. Pa. Mar. 18, 2021) (holding that assisting his mother in her daily activities while she

raised the defendant's ten-year-old daughter was not an extraordinary and compelling circumstance where the defendant did not show that his mother was completely disabled, could not carry on any self-care, or was confined to a bed or chair).

Based upon the foregoing, this Court cannot find that Defendant's familial needs with respect to financially assisting his sister constitute extraordinary and compelling circumstances warranting his compassionate release.

### iii.    Unusually Long Sentence

Finally, Defendant argues that his 300-month sentence is excessively long and that the enhancements added at sentencing could now be challenged.  (D.E. 54-2 at 1.)  While 300 months may be a long sentence, that is not an extraordinary and compelling circumstance in and of itself. *See Andrews*, 12 F.4th at 260–61 ("The duration of a lawfully imposed sentence does not create an extraordinary or compelling circumstance.").

Section 1B1.13(b)(6) states that a long sentence that would likely be lower under current law may create extraordinary and compelling circumstances.  U.S.S.G § 1B1.13(b)(6) (U.S. SENT'G COMM'N 2025).  U.S.S.G. § 1B1.13(b)(6) states in part:

> [A] change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

*Id.* However, the Supreme Court recently invalidated Section 1B1.13(b)(6) as exceeding the Commission's statutory authority. *Rutherford*, 146 S. Ct. at 1334.[7]

Furthermore, even if Section 1B1.13(b)(6) were valid, Defendant's claim still fails. Defendant does not identify any changes in the law that would result in a lower sentence if one were imposed today. If sentenced today, Defendant's advisory guidelines would be substantially the same. The only difference would be related to Amendment 791's changes to financial thresholds due to inflation.[8] At sentencing, Judge Sheridan applied a six-point increase to Defendant's offense level pursuant to Sentencing Guideline § 2B3.2(b)(2) since Defendant demanded $3 million during commission of the crime.[9] (D.E. 48 at 173; PSR ¶ 66.) If sentenced today, the increase would be five points instead of six. *See* U.S. Sentencing Commission, Amendment 791, https://guidelines.ussc.gov/apex/r/ussc_apex/guidelinesapp/appendixc-detail?APP_AMEND_ID=791 (last accessed June 10, 2026). This does not amount to an extraordinary and compelling reason given that the one-point change would not produce a gross disparity between the sentence Defendant is currently serving and that which would be imposed if he were re-sentenced today. *See United States v. Jones*, 2020 WL 7640944, at *3 (E.D. Pa. Dec. 23, 2020) (holding that Amendment 791 does not present an extraordinary and compelling reason to provide relief under § 3582(c)(1)(A)). Further, Section 1B1.13(b)(6) excludes sentence-

---

[7] The Government preserved its right to argue that the Commission lacked authority to enact § 1B1.13(b)(6) under *Andrews*. (D.E. 55 at 8–9, n.5.) The Supreme Court has now resolved that question.

[8] In 2015, Amendment 791 adjusted the financial thresholds in U.S.S.G. § 2B3.1(b)(7) to account for inflation, reasoning that as the value of the dollar has decreased, monetary losses in current offenses reflected a lower degree of harm and culpability than equivalent amounts when the monetary tables were established or last amended. U.S. Sentencing Commission, Amendment 791, https://guidelines.ussc.gov/apex/r/ussc_apex/guidelinesapp/appendixc-detail?APP_AMEND_ID=791 (last accessed June 10, 2026).

[9] The table in U.S.S.G. § 2B3.1(b)(7) also applies to § 2B3.2(b)(2). U.S.S.G. § 2B3.2(b)(2) (U.S. SENT'G COMM'N 2025).

9

affecting changes to the law that flow from "an amendment to the Guidelines Manual that has not been made retroactive," and Amendment 791 was not made retroactive. U.S.S.G. § 1B1.10(d) (U.S. SENT'G COMM'N 2025); *see United States v. Brown*, 694 F. App'x 62, 64 (3d Cir. 2017).

Finally, Defendant states that his probation officer calculated a range of 108 to 144 months when drafting his PSR. (D.E. 54-2 at 1.) However, the PSR calculated an offense level of forty-one and criminal history category of two, which corresponded to a guideline range of 360 months to life imprisonment at the time the PSR was created. (PSR ¶¶ 86, 93, 135); U.S.S.G § 5A (U.S. SENT'G COMN'N 2009). The sentence imposed on Defendant was substantially lower than that recommended in the PSR. For the reasons set forth above, Defendant does not put forth any extraordinary and compelling reasons for his release.

### B. 3553(a) Factors Weigh Against Defendant's Release

Even where extraordinary and compelling reasons are established, this Court must consider the § 3553(a) factors to the extent they are applicable. 18 U.S.C. §§ 3582(c), 3553(a). Despite finding that Defendant has not established extraordinary and compelling reasons, this Court will review the § 3553(a) factors for the purposes of completeness and finality.[10]

Defendant relies on evidence involving his completion of programming, development of new skills, psychological treatment, the need to financially support his sister, and his exceedingly long sentence. (D.E. 54-2 at 1.) Defendant asserts that he has developed a release plan and plans to seek employment as a county building inspector or work in construction. (*Id.* at 2.) He also claims that if he had been sentenced within his applicable Guidelines range of 188 to 235 months'

---

[10] "Those factors include, among other things, 'the history and characteristics of the defendant,' 18 U.S.C. § 3553(a)(1), and 'the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, . . . to provide just punishment for the offense[, and] . . . to afford adequate deterrence to criminal conduct,' *id.* § 3553(a)(2)(A)–(B)." *United States v. Pawlowski*, 967 F.3d 327, 330 (3d Cir. 2020) (alterations in original).

imprisonment, his sentence would be complete, and states that "[i]f given a reduction in sentence . . . it would not diminish from the sentence for the crimes that [he] did commit, only from the personal judicial enhancement of five and a half years." (D.E. 54-2 at 1.) Nonetheless, the seriousness of Defendant's crimes, his prior involvement in bank robberies, and evidence that he does not currently receive medication outweigh against early release.

First, the facts underlying Defendant's sentence, considered and noted at sentencing, continue to counsel against Defendant's release. The sentencing court varied upwards to a 300-month sentence because Defendant's conduct was "very egregious" and involved many victims. (D.E. 45 at 5; D.E. 48 at 242); *see* 18 U.S.C. 3553(a)(1) (nature and circumstances of offense). Defendant took five hostages on a bus outside the Showboat Casino Hotel ("Showboat") using a realistic-looking pistol and threatened to kill them. (D.E. 45 at 5; D.E. 48 at 261.) Defendant also placed a fake bomb in the Showboat and had a Molotov cocktail. (D.E. 45 at 5; D.E. 248.) These actions led to approximately two-thousand people being evacuated from the Showboat. (D.E. 45 at 5; D.E. 48 at 242, 261.) The sentencing court also varied upward because of Defendant's three prior bank robberies, which showed an "ongoing proclivity . . . toward violent crime where individuals are at risk," and noted that these prior crimes also involved hostages. (D.E. 45 at 5; PSR ¶ 91.) Judge Sheridan further noted that the three bank robberies were not adequately reflected in the Guideline calculation, and thus, this required more punishment. (D.E. 45 at 5.) The sentence imposed reflects what was necessary for specific deterrence, to promote respect for the law, protect the public, and to provide just punishment. (D.E. 48 at 241, 261); 18 U.S.C. §§ 3553(a)(2)(A)–(C). These factors weigh against Defendant's release. As noted, Defendant appealed his sentence and the Third Circuit affirmed it as procedurally and substantively reasonable. *Supra* at 2; *Kilkeary*, 410 F. App'x 554, 557–60 (3d Cir. 2011).

11

Finally, Defendant indicates in his Motion that he will not receive medication, which is required to adequately protect the public.  (D.E. 54-1 at 3.)  Defendant checked box "No" for the questions regarding whether he will require ongoing medical care after his release and if he is currently prescribed medication in the facility he is incarcerated, and additionally wrote in the answer "N/A" for questions regarding if people he is "proposing to reside with [are] aware of [his] medical needs," if he has "other community support that can assist with [his] medical needs," and if he would "have transportation to and from [his] medical appointments."  (D.E. 54-1 at 3–5); 18 U.S.C. § 3553(a)(2)(C).  Defendant also declined to provide medical documentation in connection with his application.  (D.E. 54-1 at 3.)

At sentencing, the psychologist testifying on behalf of Defendant opined that after his conviction for the prior bank robberies, Defendant's mental health treatment was inadequate, and that if he had received medication, appropriate psychotherapy, and remained monitored, the crime and the prior crimes were "not very likely to occur in the future."  (D.E. 48 at 136–38.)  Notably, when asked if Defendant would need to "be medicated for the remainder of his life," the psychologist responded:  "There is no question about that."  (D.E. 48 at 138:8–11.)  The psychologist's opinion was further echoed by Defendant's parents, who stated that their son "need[ed] to continue to be on medication" and "need[ed] to have psychological counseling." (PSR ¶ 108.)  His father specifically stated that he was "convinced this situation would have never happened if [Kilkeary] was on medication and under the care of a counselor." (PSR ¶ 111.)

After considering the relevant § 3553(a) factors and the entire record, this Court finds that the § 3553(a) factors weigh against granting compassionate release.  Even if Defendant could establish extraordinary and compelling reasons, his failure to demonstrate that the § 3553(a) factors weigh in favor of reducing his sentence is detrimental to his request for release.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's Motion for Compassionate Release is **DENIED**.

An appropriate order follows.

    /s/ Susan D. Wigenton    
**SUSAN D. WIGENTON, U.S.D.J.**

Orig:  Clerk
cc:     Parties